IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIGUEL A. RAMIREZ-ORTIZ,
JOSE IRIZARRY-ORTIZ,
JAVIER IRIZARRY-ORTIZ, and
ELIEZER IRIZARRY-ORTIZ,

     **Plaintiffs,**

       **v.**

CORPORACION DEL CENTRO
CARDIOVASCULAR DE PUERTO RICO
Y DEL CARIBE, *et al.*,

     **Defendants.**

**CIVIL NO.** 12-2024 (FAB)

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is the motion to dismiss filed by defendant Hospital de La Concepcion ("HDLC"), (Docket No. 116).  Having considered the defendant's motion, plaintiff's response, (Docket No. 127), and defendant's reply, (Docket No. 137), the Court **DENIES** HDLC's motion to dismiss.

**I.   Background**

For the purposes of defendant's motion to dismiss, the Court takes the following facts as true:  Plaintiffs are the children of Mr. Miguel Ramirez-Torres, who died on January 23, 2012 after receiving medical treatment for a cardiovascular condition. (Docket No. 85.)   HDLC is a non-profit Puerto Rico corporation which owns, operates, and/or manages a health care facility.  Id. at p. 5.  Defendant Dr. Anibal Lugo-Rosas practices medicine at

HDLC and provided Mr. Ramirez with medical care on or about December 30, 2011[1] and January 23, 2012.  Id. at p. 4.

Upon experiencing chest pains on December 31, 2011, Mr. Ramirez, age 72, was taken to Hospital Bella Vista ("HBV") in Mayagüez, Puerto Rico.  (Docket No. 85 at p. 7.)  He arrived at that hospital with signs and symptoms of acute coronary artery syndrome ("ACS") and was treated by three doctors:  Dr. Luis R. Vega-Torres, Dr. Karen Rodriguez, and Dr. Jorge Valero Torres-Olmeda.  Id.  Because Mr. Ramirez demonstrated ACS symptoms, ongoing chest pain, a positive EKG, and cardiac enzymes on January 3, 2012, an ambulance transported him from HBV to the Corporacion del Centro Cardiovascular de Puerto Rico y del Caribe ("CCCPRC")'s emergency department.  Id. at pp. 7-8.  At CCCPRC, defendant Dr. Perez-Marrero performed an urgent cardiac catheterization on Mr. Ramirez as well as a right coronary angiography.  Id. at p. 8.  Dr. Perez-Marrero also placed two drug-eluting stents in Mr. Ramirez's right coronary artery.  Id. Mr. Ramirez was discharged from CCCPRC on January 4, 2012 with the understanding that he should "follow up" for a staged late anterior descending artery stent.  Id.

On January 9, 2012, Mr. Ramirez again felt severe pain in his chest and was taken to HDLC in San German, Puerto Rico.  Id. at

---

[1] The Court finds no factual support for the allegation that Dr. Lugo-Rosas treated Mr. Ramirez on December 30, 2011.

p. 8.  The attending physician at HDLC was Dr. Lugo-Rosas.  Id.
Mr. Ramirez remained hospitalized at HDLC until January 11, 2012,
when he was transferred to Dorado Health Inc., d/b/a Mayagüez
Medical Center - Dr. Ramon Emeterio Betances ("MMC") and again
treated by Dr. Lugo-Rosas.  Id. at p. 9.  At MMC, Dr. Lugo-Rosas
took Mr. Ramirez to the cardiac catheterization laboratory, but did
not consult a cardiovascular surgeon, and did not elect to perform
coronary bypass surgery.  Id.  He did perform a catheterization,
however, and found acute thrombosis of the two stents Dr. Perez-
Marrero had placed in the right coronary artery and progressive
left anterior descending artery obstructions.  Id.  Dr. Lugo-Rosas
placed three "in tandem" stents into Mr. Ramirez's left anterior
descending artery, but was not successful in restoring flow through
the distal right coronary artery system.  Id.  After Dr. Lugo-Rosas
completed the procedure on January 11, 2012, Mr. Ramirez returned
to HDLC at night.

The next day, an order was written at HDLC to transfer
Mr. Ramirez to CCCPRC in San Juan, and on January 13, 2013
Mr. Ramirez arrived at CCCPRC with acute thrombosis "in stent," or
rethrombosis, and an extension of his previous myocardial
infarction.  Id.  He was stabilized at CCCPRC's "CCU," where he was
put on medication called Integrilin, and Dr. Perez-Marrero
performed an urgent recardiac catheterization to clear the
occlusions in the previously-placed left anterior descending and

right coronary artery stents.  Id. at pp. 9–10.  On January 18, 2012, Dr. Perez-Marrero again performed a cardiac catheterization because Mr. Ramirez continued to experience chest pains and progression of his infarction.  Id. at p. 10.

Defendant cardiovascular surgeon Dr. Ivan Gonzalez-Cancel evaluated Mr. Ramirez on January 19, 2012 and recommended surgery. Id.  On January 22, the day before the scheduled surgery, Dr. Gonzalez-Cancel entered an order that Mr. Ramirez's Integrilin medication be discontinued at 11:00 p.m.  Id.  At approximately 9:00 p.m. that evening, Mr. Ramirez suffered acute occlusion of his right coronary artery stent and extended his previous myocardial infarction.  Id. at p. 11.  He was taken to the cardiac catheterization laboratory on an emergency basis, where he was found to have complete occlusion of his right coronary artery and occluded prior left anterior descending coronary artery stents. Id. At 11:32 p.m., co-defendant Dr. Grovas-Abad performed a procedure on Mr. Ramirez in which he placed an intra-aortic balloon pump into the patient.  Id.  The procedure concluded at 12:23 a.m. on January 23, 2012, and at 12:41 a.m. Mr. Ramirez was reported as being in cardiogenic shock.  Id.  He was transferred to the CCU on or about 1:15 a.m., arriving in a comatose state.  Id.  Upon being connected to a monitor at the CCU, Mr. Ramirez registered no vital signs, and although resuscitation was attempted, Mr. Ramirez died at approximately 1:35 a.m. on January 23, 2012.  Id. at pp. 11–12.

Plaintiffs originally filed their complaint on December 18, 2012, alleging negligence pursuant to articles 1802 and 1803 of the Puerto Rico Civil Code for the medical care provided to Mr. Ramirez between December 31, 2011 and January 23, 2012 by several physicians and hospitals, but not HDLC.   (Docket No. 1.) Plaintiffs subsequently filed an amended complaint on December 28, 2012 and a second amended complaint on January 29, 2013, (Docket Nos. 8 & 34), neither of which named HDLC as a defendant.  It was not until June 4, 2013, when plaintiffs filed a third amended complaint, that plaintiffs named HDLC as a defendant.  (Docket No. 85.)

## II.  Statute of Limitations Discussion

Medical malpractice claims pursuant to articles 1802 and 1803 of the Civil Code carry a statute of limitations of one year.  P.R. Laws Ann. tit. 31, § 5298.  The prescription period begins to run "from the time the aggrieved person has knowledge thereof."  Id.; Rodriguez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir. 2009) (citing Supreme Court of Puerto Rico case law to show that "the statute of limitations starts to run once the injured party knows both that he has suffered a harm and who is responsible for it.").

HDLC claims that plaintiffs had knowledge of, or reasonably should have known about, Mr. Ramirez's alleged injury and HDLC's possible involvement as of January 23, 2012 — the date of Mr. Ramirez's death.  It thus avers that the statute of limitations

began to run on January 23, 2012.  Citing <u>Fraguada Bonilla v.</u>
<u>Hospital Auxilio Mutuo</u>, 2012 TSPR 126, 186 D.P.R. 365 (2012),
Attachment 1, HDLC also argues that plaintiffs had to toll the one-
year statute of limitations for each joint tortfeasor, and that
plaintiff's addition of HDLC as a defendant 16 months after
January 23, 2012 occurred four months too late.  (Docket No. 116 at
pp. 3-12.)  Consequently, it maintains that plaintiffs' articles
1802 and 1803 claims against it are time-barred.  In response,
plaintiffs claim (1) that they had no reason to know of HDLC's
relationship to the events alleged in the complaint until the
discovery process began,[2] and (2) that the statute of limitations
was indeed tolled against HDLC once plaintiffs named Dr. Lugo-Rosas
in their original complaint.  (Docket No. 127.)  They argue that
their article 1802 and 1803 claims must be treated differently
under <u>Fraguada</u>, especially in light of article 1803's provision
that a hospital is vicariously liable for the negligent acts or
omissions of its physicians.  Accordingly, plaintiffs contend that
their timely claim against Dr. Lugo-Rosas interrupted the statute

---

[2] The Puerto Rico Court of Appeals recently found it
reasonable to conclude that the prescriptive term for the claim
against HDLC began to run when plaintiffs found out who was
responsible for Mr. Ramirez's harm during discovery.  (Docket
No. 207-1 at p. 18.)  The Court agrees with the Court of Appeals'
conclusion and will not address the defendants' first argument
regarding plaintiffs' knowledge and the statute of limitations.
Instead, the Court confines its analysis to defendants' second
argument, that the statute of limitations was not tolled by
plaintiffs' original complaint.

of limitations against HDLC.  (Docket No. 127 at p. 16) (citing
P.R. Laws Ann. tit. 31, § 5304).  In reply, HDLC denies that the
Fraguada holding applies differently to article 1802 and 1803
claims and disputes that plaintiffs are allowed to have waited more
than one year to name it as a defendant.  (Docket No. 137.)
Because the parties do not agree on whether Fraguada is applicable,
a review of the Fraguada decision and the legal concepts underlying
the holding is warranted.

### A.   Evolution of "Solidarity" in Puerto Rico

In Puerto Rico, the concept of joint and several
liability is called "solidarity[,] [and] exists when several people
take part or cooperate in causing a wrong."  Arroyo v. Hospital de
La Concepcion, 130 D.P.R. 596, 605, 1992 Juris P.R. 66 (1992),
Attachment 2 at p. 6.  Various interpretations of solidarity exist
in foreign civil codes, and in 1992, the Supreme Court of Puerto
Rico was presented with thee occasion of surveying the concept's
history and selecting which interpretation to adopt in this
jurisdiction.  See id.  It ultimately adopted the Spanish doctrine
in effect at that time, which upheld the "homogeneous nature of
solidarity," id. at p. 8, over the French doctrine, which breaks
down the concept between "perfect and imperfect" solidarity, id.,
and held that "there is but one type of solidarity in our body of
laws."  Id. at p. 9.  In light of the single type of solidarity,
the Supreme Court of Puerto Rico held that by filing a complaint

against a joint and several co-tortfeasor, a plaintiff automatically tolls the statute of limitations as to all other co-tortfeasors.  Resting its decision "on the basic principles of justice and fairness . . . and procedural[] expedien[cy]," and claiming that the rule "conforms to the provisions of our Civil Code . . . and strikes the best balance between all the interests involved," id. at p. 10, the Supreme Court of Puerto Rico held that the unitary solidarity doctrine "allows for timely inclusion of a solidary tortfeasor not originally included in the action." Id. at p. 9.  In order to toll the statute of limitations as to any one potential defendant, therefore, a plaintiff need only have alleged in an amended complaint that the new defendant was "solidarily liable for the damages claimed against the original defendant in the complaint [that was] filed within the period of limitations prescribed by law." Id. at p. 10.  In 2008, the Supreme Court of Puerto Rico expanded the Arroyo holding to permit a plaintiff to add a joint and severally liable defendant who would otherwise be barred by the statute of limitations even though the "plaintiff knew beforehand the identity and elements necessary to exercise his cause of action against [that defendant]." Commonwealth of P.R. v. Shell Oil Co. (In re Methyl Tertiary Butyl Ether "MTBE" Prods. Liab. Litig.), 2013 U.S. Dist. LEXIS 99288, 33 (S.D.N.Y. July 16, 2013) (citing Garcia Perez v. Corp. Serv. Mujer, 2008 TSPR 114, 174 D.P.R. 138, 155, 2008 Juris P.R. 134 (2008)).

Four years later, however, the Supreme Court of Puerto Rico issued the <u>Fraguada</u> decision, which abrogated <u>Arroyo</u> and its progeny.  Commenting that "[t]ime has passed and the changes that have occurred since [the <u>Arroyo</u> decision] have not been few," the Supreme Court of Puerto Rico abandoned the Spanish homogeneous solidarity concept in favor of the bifurcated French doctrine.[3] <u>Fraguada</u>, Attachment 1 at p. 11 ("The interpretation admitted in [<u>Arroyo</u>] was abandoned in Spain for several years now, and in its stead there was adopted the French doctrine that distinguishes between two types of several liability:  perfect and imperfect."). "Perfect" solidarity occurs "between several persons joined by a common interest, which have frequent relations among themselves or know each other." <u>Id.</u> at p. 15.  "Imperfect" solidarity, by contrast, exists "when it is established by law between persons who do not know each other, who are merely accidental co-debtors or when their relations are sporadic." <u>Id.</u>  The nature of imperfect

_____

[3] Commenting about the "multiple effects of the rule applied in practice," the Supreme Court of Puerto Rico noted that:

> the cumulus of experience forces us to conclude that the standard therein established did not achieve the equilibrium that we sought.  In effect, after <u>Arroyo</u>, we recognized that this rule in effect provides greater protection to the plaintiff.

<u>Fraguada</u>, Attachment 1 at p. 21.  "[F]ar from achieving a balance between the opposing interests, this standard tips the balance of the situation in favor of the claimant." <u>Id.</u> at p. 22.  "Its outcome has been an institution of undermining prescription, since one party has the eternal right to claim damages from another." <u>Id.</u> at p. 23.

solidarity, the Supreme Court of Puerto Rico explained, imputes to each of the co-causers the responsibility of paying the whole, but each co-causer's liability "is autonomous from that of the others." Id. Given each "co-causer's" independent foundation for the joint obligation, the Supreme Court of Puerto Rico reasoned that "the secondary effects of the traditional solidarity — among them, the interruption of the prescriptive term — do not govern." Id. It thus held that "in actions for extracontractual damages [involving imperfect solidarity], the injured party must individually interrupt the prescriptive term with regard to each joint and several co-causer," id., and "timely filing of a complaint against a supposed co-tortfeasor does not toll the statute of limitations against the rest of the alleged co-tortfeasors." Id. at p. 11 (emphasis added).

   **B.  Analysis**

        The Court finds that plaintiffs' negligence claim against defendant HDLC falls outside of Fraguada's express ruling because it involves a perfect — not an imperfect — solidarity obligation. As explained by the Supreme Court of Puerto Rico, interruption of the statute of limitations "applies only to cases of proper solidarity," Fraguada, Attachment 1 at p. 19, and "improper solidarity is an exception to the standard of interruption of the prescription." Id. at p. 18. This is because "the exclusion of the secondary effects of the solidarity of several causers of an

extracontractual damage [in imperfect solidarity obligation cases]
is justified by the absence of a community of interests among those
co-obligated." <u>Id.</u> at p. 16 (citing J. Lopez Richart,
<u>Responsabilidad Personal e Individualizada</u>, Madrid, Ed. Dikinson,
2003, page 40). In other words, "[t]here does not exist a common
interest or a mutual representation [between the imperfect
solidarity co-causers, and thus each co-causer must be named within
the statute of limitations period,] because the *in solidum*
obligation does not arise from a prior agreement or pact, but from
an unconventional event." <u>Fraguada</u>, Attachment 1 at p. 16.

       To the contrary, the reason for not extending
interruption of prescription to imperfect solidarity simply does
not pertain to cases of perfect solidarity, where the nature of the
obligation "is derived from a legal standard or from a conventional
pact." <u>Fraguada</u>, Attachment 1 at p. 19. Precisely because perfect
solidarity arises from a pre-existing bond, interruptive acts <u>do</u>
<u>not</u> operate individually and prescription with regard to one of the
defendants does indeed reach the other in such cases. <u>Cf.</u> <u>id.</u>
(explaining that imperfect solidarity "does not arise from a pre-
existing bond, but from the illegal act that produced the damages,
which obtains its recognition through the judgment that declares it
to be so. Therefore, interruptive acts operate individually."); 
<u>see also</u> <u>id.</u> ("If the solidarity does not arise except for a
judgment, which is the so-called improper solidarity, the

interruption of the prescription with regard to one of the debtors
does not reach the other, since he was not a joint and several
debtor and was only so as of the judgment that declared this, not
before.") (citation omitted).  The Spanish and French doctrines
today, therefore, hold that "the interruptive effect of the
prescription . . . <u>applies only to cases of proper solidarity</u>."
<u>Id.</u> (emphasis added).

        The Court finds that a perfect solidarity obligation
arises in medical malpractice cases where a hospital and physician
are jointly liable for a physician's negligent care pursuant to
article 1803's vicarious liability doctrine.  Article 1803 provides
an exhaustive list of circumstances in which a party may be
vicariously liable for another party's tort, one of which is an
employer/employee relationship.  P.R. Laws Ann. tit. 31 § 5142.  As
the Court has noted before:

> A leading commentator on the Spanish civil code confirms
> that the liability imposed by article 1803 on those who
> must answer for the negligent act or omissions of another
> is not subsidiary ["subsidiaria"], but rather, direct.
> Manresa, <u>Comentarios al Codigo Civil Español</u>, 5th ed.,
> 1951, T.12, p. 665.  (Court's translation.)  The law
> imposes such direct liability when a special relationship
> of authority or superiority exists, and harm is caused by
> the superior's dependents in the effectuation of services
> with which the superior has been entrusted.  <u>Id.</u> at
> p. 672.

<u>Casillas-Sanchez v. Ryder Mem. Hosp., Inc.</u>, 2013 U.S. Dist. LEXIS
116654, *10-11 (Aug. 15, 2013) (Besosa, J.).  Article 1803 is a
legal standard giving rise to a hospital and its employee

physicians' obligations, and the "special relationship" between the
hospital and the physician both demonstrates frequent relations
among the parties and creates a common interest and pre-existing
bond between them.  Perfect solidarity exists, therefore, and each
"co-causer" need not be named within the statute of limitations
period in order for a plaintiff's claim to survive.  See Fraquada,
Attachment 1 at p. 19.

        Taking the complaint as true, which the Court must do at
the motion to dismiss stage, the Court finds sufficient facts to
infer that a perfect solidarity obligation exists between
defendants HDLC and Dr. Lugo-Rosas.  Given that when Mr. Ramirez
was admitted to HDLC directly on January 9, 2012, and the physician
who attended him was Dr. Lugo-Rosas, it is plausible that
article 1803 would hold HDLC and Dr. Lugo-Rosas jointly and
severally liable because Mr. Ramirez entrusted his health to the
hospital and HDLC provided Dr. Lugo-Rosas as a treating physician.
See id. at *8-9.  As the Court has previously held:

> the Supreme Court of Puerto Rico has made clear that the
> [vicarious liability] doctrine has expanded to situations
> where a patient seeks medical aid directly from a
> hospital and the hospital provides the treating physician
> — regardless of the physician's employment relationship
> with the hospital.

Id. at *10.  Because article 1803 dictates a joint and several
liability relationship between a hospital and a negligent doctor,
when the physician is an employee of the hospital or when a patient
seeks treatment directly from a hospital and the hospital provides

Civil No. 12-2024 (FAB)                                                    14

the physician who provides the treatment, even though the doctor is not the hospital's employee, perfect solidarity exists between HDLC and Dr. Lugo-Rosas.  It follows, therefore, that the interruptive effect of prescription applies to plaintiffs' negligence claims against HDLC and Dr. Lugo-Rosas, and that the original complaint's inclusion of Dr. Lugo-Rosas tolled the statute of limitations as to HDLC.

**III. Conclusion**

For the reasons discussed above, defendant HDLC's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 12, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE