IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MIGUEL A. RAMIREZ-ORTIZ, *et al.*,<br><br>**Plaintiffs**,<br><br>v.<br><br>CORPORACION DEL CENTRO CARDIOVASCULAR DE PUERTO RICO Y DEL CARIBE, *et al.*,<br><br>**Defendants**. | CIVIL NO. 12-2024 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Hospital Bella Vista ("HBV")'s amended motion for partial summary judgment, (Docket No. 306), joined by Dr. Karen Rodriguez-Maldonado, (Docket No. 300), and the Sindicato de Aseguradores para la Suscripción Conjunta de Seguro de Responsabilidad Profesional Medico-Hospitalaria ("SIMED 4"), as Dr. Rodriguez-Maldonado's insurance carrier, (Docket No. 301). For the reasons discussed below, the Court **GRANTS IN PART and DENIES IN PART** defendants' motion.

I.  **Rule 56 Standard**

Summary judgment serves to assess the evidence and determine if there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990); see Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 187 (1st Cir. 1997) ("The objective of summary judgment is to pierce the boilerplate of the

Civil No. 12-2024 (FAB)                                                     2

pleadings and assay the parties' proof in order to determine whether trial is actually required.") (citation omitted).  "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trialworthy issue as to some material fact."  Cortes-Irizarry, 111 F.3d at 187 (citation omitted).  The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it has the potential to "affect the suit's outcome."  Cortes-Irizarry, 111 F.3d at 187.  A dispute is "genuine" when it "could be resolved in favor of either party."  Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion.  Catrett, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  Only when a properly supported motion has been presented does the burden shift to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor."  Santiago-Ramos v. Centennial P.R.

Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).

## II. Discussion

This case arises from the death of 72-year-old Miguel Ramirez-Torrez on January 23, 2012 after having received medical care in Puerto Rico.  The motion for summary judgment currently before the Court concerns the medical care Mr. Ramirez received at HBV during a small window of time:  from December 30, 2011 until January 2, 2012, after which Mr. Ramirez was transferred to another hospital.  After arriving at HBV on December 30, 2011, Mr. Ramirez was treated at HBV's Emergency Room by Dr. Cecila Arango and, during his subsequent hospitalization, he was seen by family medicine physician residents as well as by defendants Dr. Luis R. Vega-Torres, Dr. Karen Rodriguez, and by Dr. Jorge Valero Torres-Olmeda.  (Docket No. 85 at p. 7; Docket No. 98 at pp. 5–6.)

Citing testimony from plaintiff's expert, Dr. Carl W. Adams, that "the emergency room care [at HBV] in my opinion, wasn't the best, but it is not a violation of the standard of care with the exception of the cardiologist who gets involved treating the patient," (Docket No. 332-1 at p. 61), HBV alleges that plaintiffs have not presented sufficient evidence to establish a *prima facie* case against HBV for the negligence of any physician other than Dr. Rodriguez.  (Docket No. 299 at p. 7.)  It thus seeks dismissal of claims alleging liability by HBV "with the exception of the

Civil No. 12-2024 (FAB)                                                    4

allegations of negligence against Dr. Karen Rodriguez." Id. Because plaintiffs do not oppose, and the Court finds no evidence in the record to otherwise support a basis of hospital liability on the actions of Dr. Torres, Dr. Vega, or other HBV emergency room personnel, the Court **GRANTS** HBV's motion for summary judgment as to those defendants. At trial, HBV's liability will hinge only upon its own negligence or the alleged negligence of Dr. Rodriguez.

Separately arguing thereafter that no *prima facie* case can be made against Dr. Rodriguez, HBV ultimately seeks dismissal of "all claims" against it. (Docket No. 299 at pp. 7-9.) Plaintiffs respond that, because Dr. Adams' written report and deposition declarations do establish the *prima facie* elements of medical malpractice against Dr. Rodriguez, hospital liability consequently attaches, and summary judgment is not warranted as to Dr. Rodriguez or HBV. (Docket No. 323.) For the reasons discussed below, the Court agrees with plaintiffs and **DENIES** HBV's motion for summary judgment as to liability for Dr. Rodriguez's alleged negligence.

**A.  Physician's Liability**

**1.  Medical Malpractice Standard**

Medical malpractice liability in Puerto Rico is negligence- and fault-based. Rodriguez-Diaz v. Seguros Triple-S, 636 F.3d 20, 23 (1st Cir. 2011) (internal citation omitted). Puerto Rico's general negligence statute, article 1802 of the Civil Code, states that "a person who by an act or omission causes damage

to another through fault or negligence shall be obliged to repair the damage done."  P.R. Laws Ann. tit. 31, § 5141.  "Within this rubric, three elements coalesce to make up a *prima facie* case for medical malpractice (a species of professional negligence)." Martinez-Serrano v. Quality Health Servs. of P.R., Inc., 568 F.3d 278, 285 (1st Cir. 2009).  To prove medical malpractice in Puerto Rico, a plaintiff must establish:  "'(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances), (2) an act or omission transgressing that duty, and (3) a sufficient causal nexus between the breach and the claimed harm.'"  Torres-Lazarini v. United States, 523 F.3d 69, 72 (1st Cir. 2008) (citing Cortes-Irizarry, 111 F.3d at 189).

Puerto Rico law holds physicians in malpractice cases to a national standard of care.  Cortes-Irizarry, 111 F.3d at 190.  A physician's duty, therefore, is to provide patients with medical care "that, in the light of the modern means of communication and education, meets the requirements generally recognized by the medical profession."  Santiago-Otero v. Mendez, 135 P. R. Dec. 540, 1994 P.R.-Eng. 909,224 (1994); Rolon-Alvarado v. San Juan, 1 F.3d 74, 77-78 (1st Cir. 1993) (holding that a health care provider "has a duty to use the same degree of expertise as could reasonably be expected of a typically competent practitioner in the identical specialty under the same or similar circumstances") (citing Oliveros v. Abreu, 101 P.R. Dec. 209, 1

Civil No. 12-2024 (FAB)                                                6

P.R. Offic. Trans. 293 (1973)).  A treating physician enjoys a presumption that he or she possessed the reasonable knowledge and skills required by the controlling medical standards, and that he or she provided reasonable and adequate care to the patient.  Del Valle-Rivera v. United States, 630 F. Supp. 750, 756 (D.P.R. 1986) (Fuste, J.).  In order to overcome this presumption, a plaintiff ordinarily must provide expert testimony to outline the minimum acceptable standard of care and to conform the defendant doctor's failure to meet it.  Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 113 (1st Cir. 2010).

    **2.   Which Evidence May the Court Consider?**

As a preliminary matter, the Court addresses concerns over which evidence may be considered at the summary judgment stage.[1]  While "a court may take into account any material that would be admissible or usable at trial[,] . . . inadmissible evidence may not be considered."  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citation omitted).  Dr. Adams' unsworn statement under penalty of perjury, filed on July 8, 2014, purports to correct statements made nearly six months earlier at his deposition taken on January 20, 2014.  (Docket No. 324-2 at p. 1) ("I have read the transcript of [my] deposition and, upon reviewing again

---

[1] On July 17, 2014, defendant HBV filed a motion *in limine* to exclude Dr. Adams' unsworn statement under penalty of perjury. (Docket No. 332.)  The Court also notes plaintiffs' reliance on Dr. Adams' unsworn expert report at Docket No. 324-6.

Civil No. 12-2024 (FAB)                                                7

the medical records pertaining to the emergency room stay of Miguel Ramirez at [HBV] on December 30-31, 2011, I have realized that part of the testimony given by me at the aforementioned deposition was incorrect.")  The Court finds Dr. Adams' statement to be a "sham affidavit," filed only after HBV's motion for summary judgment, submitted merely to contradict his earlier statements without offering any explanation, and offered only to create genuine disputes of material facts regarding Mr. Ramirez's medical care at HBV.  As such, it is inadmissible for summary judgment purposes, and HBV's motion *in limine* at Docket No. 332 is **GRANTED**.  See 11-56 Moore's Federal Practice § 56.94[5] ("A party may not create a genuine dispute as to a material fact by submitting an affidavit or declaration that merely contradicts the party's earlier statements, with no explanation of the conflict."); Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 5 (1st Cir. 1994) ("[W]e think it significant that the affidavit was offered only after defendants had filed motions for summary judgment. In these circumstances, we are persuaded that plaintiff's affidavit should be disregarded in considering the propriety of summary judgment."); Law Co. v. Mohawk Constr. & Supply Co., 577 F.3d 1164, 1169 (10th Cir. 2009) ("[A]n affidavit may not be disregarded [solely] because it conflicts with the affiant's prior sworn statements . . . . We explicitly require that a district court first determine whether the conflicting affidavit is simply an attempt to create a sham fact issue before

Civil No. 12-2024 (FAB)                                                8

excluding it from summary judgment consideration.") (citations and internal quotation marks omitted).

Plaintiffs also seek to rely on Dr. Adams' expert report in opposing HBV's motion for summary judgment. (Docket No. 324-6.) Because Dr. Adams' expert report is unsworn, it is an inadmissible hearsay document that cannot be considered as part of the summary judgment record. See Pack v. Damon Corp., 434 F.3d 810, 815 (6th Cir. 2006) (expert report was "unsworn and thus is hearsay, which may not be considered on a motion for summary judgment"); Capobianco v. City of N.Y., 422 F.3d 47, 55 (2d Cir. 2005) (stating that unsworn physician's letters "generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment"); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). To be considered at the summary judgment stage, therefore, Dr. Adams' expert opinion must be elicited through the testimony of the expert witness himself, not through his report.

Even without the expert report and sham affidavit, evidence of Dr. Adams' opinions are before the Court, as HBV itself attached the transcript of Dr. Adams' entire deposition to its motion *in limine* at Docket No. 332. When ruling on a motion for summary judgment, a court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ.

Civil No. 12-2024 (FAB)                                                9

P. 56(c)(3).  Although under no duty to ferret through the record, see Loc. R. 56(e), the Court will consult Dr. Adams' deposition to entertain whether plaintiffs establish a *prima facie* case of medical malpractice.

### 3. Analysis

The Court finds sufficient evidence in the record to sustain a *prima facie* case of liability for medical malpractice against Dr. Rodriguez.  In his deposition, Dr. Adams first sets forth the minimum standard of professional knowledge and skill required by medical practitioners in the relevant circumstances:

> The standard of care requires that if a physician is going to start lytic therapy, that the lytic therapy be started in anticipation of immediate[] intervention.  The reason is, lytic therapy begins the thrombolytic process of dissolving the clot.  It does nothing to relieve the obstruction.  So, it is appropriate for any physician to start lytic therapy only if there's going to be a reasonable expectation that patient is going to get an intervention.

(Docket No. 332-1 at p. 46.)  Further, he explained that "lytic therapy is given in anticipation of an intervention . . . [a]nd, that given alone, is not the standard of care." Id. at p. 57.  He opined that once lytic therapy is administered, the the patient should be transferred for further treatment.  "[I]t was appropriate to initiate lytic therapy, but it was not carried in the standard of care because, you have to transfer that patient to a facility in a reasonable amount of time for an intervention." Id. at p. 58.  The appropriate time to transfer was "within 90 minutes, because

Civil No. 12-2024 (FAB)                                                    10

you have lytic therapy started, you have the ability to transfer this patient to a higher level of care, the guidelines say 90 minutes is ideal, but immediately transfer is recommended." Id. at p. 61.

Dr. Adams next testified as to the acts or omissions attributable to both defendants (HBV and Dr. Rodriguez) which transgressed their duty: Dr. Rodriguez's failure to transfer Mr. Ramirez within an appropriate amount of time. "[T]he guidelines say within 90 minutes [from the time lytic therapy started,] that patient should be transferred for a PCI." (Docket No. 332-1 at p. 63.) "The key is, if it's non PCI facility [like HBV], you must then arrange for transfer of that patient, immediately to a higher level care for intervention. You just can't leave someone on lytic therapy for three days, because they get reperfusion injury." (Docket No. 332-1 at p. 59.) He opined that Dr. Rodriguez did not send Mr. Ramirez for cardiac catheterization and surgical treatment in a timely fashion, and that was a breach of the standard of care. Id. at p. 91. Thus, plaintiffs put forth sufficient evidence to establish the second element of a *prima facie* medical malpractice claim.

Finally, when probed about the causal nexus between the patient's death and treatment received at HBV, Dr. Adams testified that:

> the treatment of the myocardium with a thrombolytic agent requires that intervention be performed timely. And time

Civil No. 12-2024 (FAB)                                                11

>     lost, whether it's a day, two days, loses the recruitment ability of myocardial cell mass.  So, the hospital has a relationship to the amount of muscle Mr. Ramirez had left before his first cardiac catheterization and the amount of muscle that was left after his failed stent placements.

(Docket No. 332-1 at pp. 90-91.)  He further stated, "My opinion is, if this patient would have been treated in a timely fashion by Dr. Rodriguez and your hospital [HBV], this patient would be alive today."  Id. at p. 91.  Dr. Adams explicitly determined that Mr. Ramirez lost between 20 and 25% of myocardium mass as a result of Dr. Rodriguez's alleged negligence.  Id. at p. 101.  He thus alleged a sufficient causal nexus between the breach and the claimed harm, meeting the third element of a *prima facie* case.

In light of Dr. Adams' deposition testimony, the Court finds sufficient evidence to support a *prima facie* case of medical malpractice against Dr. Rodriguez pursuant to Puerto Rico law.  Moreover, because "[i]n a medical malpractice case, issues of deviation from the medical care are questions of fact that must be decided by the jury," Morales v. Monagas, 723 F. Supp. 2d 416, 423 (D.P.R. 2010) (Gelpi, J.) (citing Cortes-Irizarry, 111 F.3d at 189), the question of whether Dr. Rodriguez provided negligent medical care to Mr. Ramirez is not to be resolved on summary judgment.  Morrissey v. Procter & Gamble Co., 379 F.2d 675, 677 n.2 (1st Cir. 1967) ("[I]ssues of fact are not to be resolved on summary judgment.").

Civil No. 12-2024 (FAB)                                                  12

### B.   The Hospital's Liability

It has long been held under Puerto Rico law that a hospital may be held vicariously liable for the actions of employee physicians.  Marquez-Vega v. Martinez Rosado, 16 P.R. Offic. Trans. 487, 116 D.P.R. 397, 404-406 (1985).  Given the evolutionary nature of hospitals, courts in Puerto Rico also extend vicarious liability "to situations where a patient seeks medical aid directly from a hospital and the hospital provides the treating physician — regardless of the physician's employment relationship with the hospital."  Casillas-Sanchez v. Ryder Mem. Hosp., Inc., 960 F. Supp. 2d 362, 366 (D.P.R. 2013) (Besosa, J.).  Because a hospital also owes an independent duty of care to patients, it may face liability for its own negligence as well.  Marquez-Vega v. Martinez-Rosado, 16 P.R. Offic. Trans. 487; Casillas-Sanchez, 960 F. Supp. 2d at 366.  As discussed above, plaintiffs seek to prove that Dr. Rodriguez breached her standard of medical care by administering lytic therapy but failing to transfer Mr. Ramirez to a PCI facility timely for further treatment.  Because Dr. Rodriguez had privileges as a consulting physician in cardiology at HBV during the time she treated Mr. Ramirez, (Docket No. 298-2 at p. 13), and because Mr. Ramirez sought medical aid directly from HBV, the hospital faces liability for Dr. Rodriguez's alleged negligence.  Accordingly the Court **DENIES** HBV's request that summary judgment be granted as to all claims against it.

Civil No. 12-2024 (FAB)                                                       13

### III. Conclusion

The Court **GRANTS IN PART and DENIES IN PART** HBV's motion for summary judgment, joined by Dr. Rodriguez and SIMED 4. (Docket No. 306.) All claims for HBV's liability based on the negligence of physicians other than Dr. Rodriguez are **DISMISSED**. Plaintiffs may pursue liability against HBV, however, based on Dr. Rodriguez's medical care to Mr. Ramirez. HBV's motion *in limine* at Docket No. 332 is **GRANTED**; plaintiffs are precluded from using Dr. Adams' unsworn statement, included as Exhibit B to Docket No. 324, to support their motion for summary judgment and at trial.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 23, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE
