IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIGUEL A. RAMIREZ-ORTIZ,
JOSE IRIZARRY,
JAVIER IRIZARRY-ORTIZ and
ELIEZER IRIZARRY-ORTIZ,

**Plaintiffs**,

v.

CIVIL NO. 12-2024 (FAB)

CORPORACION DEL CENTRO
CARDIOVASCULAR DE PUERTO RICO
Y DEL CARIBE, *et al.*,

**Defendants**.

**MEMORANDUM AND ORDER**[1]

BESOSA, District Judge.

Pending before the Court are: (1) the motion for partial summary judgment filed by plaintiffs[2] (Docket No. 273) against defendant Corporacion del Centro Cardiovascular de Puerto Rico y del Caribe ("CCCPRC"), CCCPRC's opposition (Docket No. 278), and plaintiffs' reply (Docket No. 320), as well as (2) the motion for

---

[1] Matthew D'Auria, a second-year student at the University of Virginia School of Law, assisted in the preparation of this memorandum and order.

[2] Miguel A. Ramirez-Ortiz ("Miguel A. Ramirez") is the biological son of Miguel Ramirez-Torres ("Mr. Ramirez") and Ramonita Ortiz-Sanabria ("Ramonita Ortiz"). Jose Irizarry-Ortiz ("Jose Irizarry"), Javier Irizarry-Ortiz ("Javier Irizarry"), and Eliezer Irizarry-Ortiz ("Eliezer Irizarry" and, together with Miguel A. Ramirez, Jose Irizarry, and Javier Irizarry, "plaintiffs"), are sons of Ramonita Ortiz who were each raised by Mr. Ramirez from an early age. Plaintiffs brought suit for alleged acts and/or omissions in the medical treatment provided to Mr. Ramirez, which they claim resulted in his premature death. Thus, they assert a cause of action for negligence pursuant to articles 1802 and 1803 of the Puerto Rico Civil Code.

Civil No. 12-2024 (FAB)                                                      2

summary judgment filed by CCCPRC (Docket No. 309) against plaintiffs, plaintiffs' opposition (Docket No. 326), and CCCPRC's reply (Docket No. 349).  Because there exists a genuine dispute between the parties over the exact nature of the relationship between Mr. Ramirez, CCCPRC, and doctors Edwin Perez-Marrero ("Dr. Perez-Marrero") and Damian Grovas-Abad ("Dr. Grovas-Abad") at the time of Mr. Ramirez's treatment at CCCPRC, the plaintiffs' motion for summary judgment is **DENIED**.  CCCPRC's motion for summary judgment is also **DENIED** because it (a) emphasizes the same factual dispute outlined by plaintiffs' motion, and also (b) demonstrates the existence of another genuine dispute of material fact regarding whether the conduct of certain CCCPRC nurses who participated in the medical treatment of Mr. Ramirez satisfied the applicable standard of care.

**I.    Rule 56 Standard of Review**

Summary judgment serves to assess the evidence and determine if there is a genuine need for trial.  Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).  The Court may enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it has the potential to "affect the suit's outcome."  Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 187 (1st Cir. 1997).  A dispute is "genuine" when it "could be resolved in favor

Civil No. 12-2024 (FAB)                                                   3
_____

of either party." Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion.  Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  Once a properly supported motion has been presented, the burden shifts to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).  In making this assessment, the Court must take the entire record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.  Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir. 2011).

**II. A Hospital's Liability for Alleged Malpractice of Non-Employee, Privileged Physicians**

In their complaint, plaintiffs claim that defendant CCCPRC is liable for the negligent conduct of Dr. Perez-Marrero and Dr. Grovas-Abad, both of whom "failed to provide appropriate treatment for Mr. Ramirez' cardiovascular condition," causing his untimely death.  (Docket No. 85 at p. 14.)  Dr. Perez-Marrero and

Civil No. 12-2024 (FAB)                                                         4

Dr. Grovas-Abad are not employees of CCCPRC, but rather are private practice interventional cardiologists with certain hospitalization privileges at CCCPRC.  (Docket No. 310 at p. 2.)  Plaintiffs assert that CCCPRC is nonetheless liable for the supposed negligence of each physician because Mr. Ramirez entrusted his health "first and foremost" to the hospital, and not to the individual doctors.  (Id. at pp. 9 & 32; Docket No. 327 at pp. 3 & 25.)  It is on this particular issue of CCCPRC's vicarious liability — and not on the underlying issue of the physicians' individual negligence — that plaintiffs currently move for summary judgment.  Defendant CCCPRC argues that plaintiffs' motion for summary judgment must be denied because "the facts set forth in [plaintiffs'] [s]tatement of [u]ncontested [m]aterial [f]acts as being uncontested are anything but . . . ."  (Docket No. 278 at p. 2.)  Both in its opposition and its own motion for summary judgment, CCCPRC denies liability, arguing that Mr. Ramirez was, at all times during his medical treatment at the hospital, a "private patient" of Dr. Perez-Marrero.  (Docket No. 278 at p. 12; Docket No. 309 at p. 20.)

    **A.   Legal Standard**

Pursuant to Puerto Rico law, "whether a hospital may be held liable for the malpractice committed exclusively by a physician who is not an employee [but is granted the privilege of using the hospital's facilities for his or her private patients] depends on the patient-hospital relationship" and "whether the

patient entrusted his or her health to the hospital or to the physician." Casillas-Sanchez v. Ryder Mem'l. Hosp., Inc., 960 F. Supp. 2d 362, 365-66 (D.P.R. 2013) (Besosa, J.) (citing Marquez-Vega v. Martinez-Rosado, 16 P.R. Offic. Trans. 487 (1985)[3]). Thus, "when a person goes directly to a hospital for medical treatment and the hospital 'provides' the physician who treats him [or her]," the hospital is vicariously liable for the physician's negligence because the individual seeking medical aid has entrusted his or her health to the hospital as an institution. Marquez-Vega, 16 P.R. Offic. Trans. 487. Under that framework, "it makes no difference whether the attending physician is a hospital employee or not, or a physician granted a 'franchise' to offer his [or her] specialized medical services to the hospital patients, or a physician belonging to the hospital staff and called in for consultation to treat the patient, etc." Id. On the other hand, when a patient "goes directly to a physician's private office, agrees with him [or her] as to the treatment he or she is going to receive, and goes to a given hospital on the physician's recommendation merely because said institution is one of several which the physician has the privilege of using," the hospital is not liable for the negligent conduct of the physician because the patient "first and foremost

---

[3] "The official translations of many Puerto Rico Supreme Court cases . . . do not contain internal page numbers. Accordingly, we cannot include pin-point citation references for those cases." Citibank Global Markets, Inc. v. Rodriguez-Santana, 573 F.3d 17 (1st Cir. 2009).

Civil No. 12-2024 (FAB)                                                6

entrust[s] [his or her] health" to the physician.  Id.  There, "the main relationship established is between the patient and the physician, while the relationship established between the patient and the hospital is of a supplementary and incidental nature."  Id.

**B.  Application**

Upon review of the parties' submissions, the Court finds that genuine issues of material fact exist regarding the nature of Mr. Ramirez's relationship with CCCPRC and doctors Perez-Marrero and Grovas-Abad at the time Mr. Ramirez received medical treatment at CCCPRC.  The facts available in the record, for example, do not clearly demonstrate the exact manner in which Mr. Ramirez's case came to the attention of either Dr. Perez-Marrero or CCCPRC as an institution.  CCCPRC argues that Mr. Ramirez was admitted to the hospital as a "private patient" of Dr. Perez-Marrero after Dr. Karen Rodriguez ("Dr. Rodriguez"), a physician at Hospital Bella Vista, "consulted" with him directly about Mr. Ramirez's condition.  (Docket No. 278 at p. 3; Docket No. 279 at pp. 4-5.)  It is unclear, however, whether a line of communication was made directly and initially with Dr. Perez-Marrero, or whether it came about only after Dr. Rodriguez called CCCPRC's general number, due to the PCI[4] facility's known services, and looking for any available interventional cardiologist with whom to confer.  In her deposition, Dr. Rodriguez implies the occurrence of the latter

---

[4] Percutaneous coronary intervention.

scenario, stating that Dr. Perez-Marrero "was the only [interventional cardiologist] [she] found out was available from the Hospital Cardiovascular."  (Docket No. 274-1 at p. 2.)  An excerpt of Dr. Rodriguez's deposition also reveals: "I then called Dr. Edwin Perez in order to, as established by the guidelines, evaluate the catheterization for possible angioplasty."  (Docket No. 310-5 at p. 4.)

The degree of relationship between Mr. Ramirez and both Dr. Perez-Marrero and CCCPRC is important to determine whether the patient went "directly to a hospital for medical treatment and the hospital 'provide[d]' the physicians who treat[ed] him."  Marquez-Vega, 16 P.R. Offic. Trans. 487.  Extrapolating from the relevant case law, the Court finds that an avenue of vicarious liability may exist against a hospital when a patient is transferred from another hospital to the care of a privileged, non-employee physician at the hospital, and the transfer is effectuated through a call to the hospital itself in search of specialized PCI-services that the hospital is certified to provide.  When a patient under those circumstances receives treatment from a specific doctor solely by virtue of a hospital's referral, and he or she does not demonstrate any meaningful level of participation in the selection of a particular physician, the patient may be seen to have entrusted his or her health first and foremost to the hospital as an

Civil No. 12-2024 (FAB)                                                8

institution.[5]  Resolution of the disputes over (1) the precise manner in which Dr. Rodriguez began her correspondence with Dr. Perez-Marrero, and (2) the degree of importance of CCCPRC's services as a PCI facility to Mr. Ramirez's treatment, are vital to establish to whom Mr. Ramirez truly entrusted his health, and, consequently, to determine whether CCCPRC is vicariously liable for the alleged acts of malpractice.  Because the matter involves issues of material fact that are not readily reconciled by information available in the record, the question is to be resolved at trial.  The plaintiffs' motion for summary judgment, therefore, is appropriately **DENIED**.

---

[5] In extending the rule of hospital liability to a patient whose current physician contacts the hospital in search of a hospital's specialist, the Court reiterates the importance of the nature of the relationship existing between the patient and the physician prior to the negligent conduct.  Determinations of vicarious liability in the applicable precedent have relied heavily on the amount of personal interaction between doctor and patient prior to an instance of malpractice, with less significant levels of interaction supporting the imposition of liability against the hospital.  See Mercado-Velilla v. Asociacion Hosp. del Maestro, 902 F. Supp. 2d 217, 237 (D.P.R. 2012) (Garcia-Gregory, J.) (finding hospital vicariously liable for negligence of non-employee physician in part because there was "no indication that plaintiff had ever seen either of the doctors prior to [her] visits" to the hospital); Recio v. Hosp. del Maestro, 882 F. Supp. 220, 225 (D.P.R. 1995) (Acosta, J.) (dismissing claims of vicarious liability against hospital for negligent acts of non-employee physician where plaintiff — who had previously received medical treatment from the physician at a private, unaffiliated clinic — went to hospital's emergency room pursuant to physician's instructions.)  Where, as alleged here, a patient is transferred to a hospital in the wake of a phone call to the hospital's general number and in search of the hospital's PCI facilities, personal interaction between the patient and the individual physician prior to the patient's arrival may not be significant.  For a hospital to avoid liability in that scenario, evidence must be presented to determine whether the patient has entrusted his or her well-being to the physician specifically, rather than to the hospital generally.

Civil No. 12-2024 (FAB)                                                    9

       To the extent that it advances similar arguments, CCCPRC's motion for summary judgment is also **DENIED**. CCCPRC additionally asserts that, as private practice physicians with privileges at CCCPRC, Dr. Perez-Marrero, Dr. Grovas-Abad, and Dr. Ivan Gonzalez-Cancel each "can evaluate and accept individuals for medical care as [their] private patients and thereafter make arrangements for [their] private patients to receive medical treatment at the CCCPRC facilities." (Docket No. 309 at p. 21.) Simply by virtue of the doctors' independence and Mr. Ramirez's admittance as Dr. Perez-Marrero's private patient at "all times when he was receiving medical services at CCCPRC," CCCPRC claims that the hospital cannot be held vicariously liable for the malpractice acts or omissions of the physicians in question. Id. at pp. 21-22. It offers the following as primary evidence of the "private patient" relationship: (1) an unsworn statement under penalty of perjury by Dr. Jose Novoa Loyola, CCCPRC's medical director (Docket No. 310-4); (2) the deposition testimony of Dr. Novoa (Docket No. 310-17); (3) the deposition testimony of Dr. Perez-Marrero (Docket No. 310-3); and (4) a physician's order from Hospital Bella Vista (HBV) stating that the patient was to be transferred to CCCPRC "under care of Dr. Edwin Perez for LHC [left heart catheterization], + possible PCI [percutaneous coronary intervention]." (Docket No. 310-6). That evidence, however, does not conclusively establish that Mr. Ramirez was Dr. Perez-Marrero's

Civil No. 12-2024 (FAB)                                                         10

private patient *such that he entrusted his health specifically to the physician*.

Defendant CCCPRC's interpretation that when a patient is a private patient of the non-employee physician, categorically no hospital liability may attach, (Docket No. 310 at p. 20) is simply

Civil No. 12-2024 (FAB)                                                         11

too narrow a reading of the applicable precedent.[6]  The Supreme Court of Puerto Rico in Marquez-Vega was specifically faced with

---

[6] CCCPRC relies heavily on the Supreme Court of Puerto Rico's decision in Fonseca v. Hosp. HIMA, 184 D.P.R. 281 (2012) to argue that a hospital "has no liability at all" for malpractice acts or omissions of non-employee physicians "if the patient is a private patient." (Docket No. 309 at p. 20.)  CCCPRC argues that Mr. Ramirez was Dr. Perez-Marrero's private patient at all times during his treatment, and offers several pieces of information to support that claim, including that: (a) Mr. Ramirez was not a patient "addressed" to Dr. Perez-Marrero, (b) Dr. Perez-Marrero had the ability to evaluate and accept or reject Mr. Ramirez for treatment independently, and (c) Dr. Perez-Marrero needed to fill out and present the necessary paperwork and "orders" to the CCCPRC staff before the transfer of Mr. Ramirez could proceed.  Id.

From a purely technical standpoint, these facts could support defendant's claim that Mr. Ramirez was Dr. Perez-Marrero's "private patient" at the time of his treatment.  The standard of vicarious liability promulgated by the Supreme Court of Puerto in Marquez-Vega — that of patient entrustment — however, makes clear that the true point of consideration should be the patient-hospital versus the patient-physician relationship.  See 16 P.R. Offic. Trans. 487 ("[T]he correct solution to this problem lies in pinpointing who did the patient — first and foremost — entrust with his health: the hospital or the physician.")  Here, while Mr. Ramirez may have been labeled a private patient of Dr. Perez-Marrero pursuant to the hospital's internal procedural regulations, the alleged lack of personal interaction between doctor and patient prior to treatment at CCCPRC does not foreclose the possibility that Mr. Ramirez entrusted his healthcare to the hospital generally, rather than to Dr. Perez-Marrero specifically.  Thus, the issue at trial will be whether Mr. Ramirez entrusted his care to the hospital or to the physician, taking into account how Mr. Ramirez came to be treated at CCCPRC and whether the hospital "provided" the physicians who treated him.  See id.

The Supreme Court of Puerto Rico has acknowledged "the complexity of the new internal relationships between hospitals and physicians" and how such intricacy has "brought about in the United States a deep change in the doctrine dealing with the hospital's liability towards patients and the acts of professional malpractice occurring in its facilities." Marquez-Vega, 16 P.R. Offic. Trans. 487.  This increased complexity has seemingly produced an inherent difficulty in discerning a legal definition for the term "private patient."  Because the Supreme Court of Puerto Rico's rule of non-liability for "private patients" does not square completely with its principle of entrustment, courts are left to reconcile both positions when engaging in vicarious liability determinations.

Civil No. 12-2024 (FAB)                                             12

the question of whether "the hospital may be held liable for the malpractice committed exclusively by a physician not employed by the hospital, which physician was granted the privilege of using the hospital facilities *for his private patients*."  16 P.R. Offic. Trans. 487 (emphasis added).  Rather than issuing a categorical rule that a private patient-doctor relationship precludes hospital liability — as CCCPRC reads the opinion to do — the Supreme Court of Puerto Rico indicated that the better point of focus is, in essence, to compare the patient-physician and patient-hospital relationships.  Id. ("[T]he correct solution to this problem lies in pinpointing who did the patient — first and foremost — entrust with his health:  the hospital or the physician.").  "[W]hen a person goes directly to a hospital for medical treatment and the hospital 'provides' the physicians who treat him," joint liability for a hospital and private physician attaches because of the level of patient-hospital relationship.  Id.  Four reasons underlie the imposition of hospital liability in that situation.  First, "the hospital is the one that 'provides' the service of the physician, and the patient usually has no option or participation in said choice."  Id.  Second, "from the patient's point of view[,] what he has in 'front' of him [or her] is the institution as such, not physicians independent and distinct from each other and from the hospital."  Id.  Third, "the main relationship established is between the patient and the hospital administration."  Id.

Civil No. 12-2024 (FAB)                                              13

Finally, "the hospital is the main beneficiary of the work done by the physician."  Id.

As the Court has noted above, the circumstances surrounding Mr. Ramirez's transfer to CCCPRC present genuine issues of material fact that are heavily disputed by the parties.  The summary judgment record does not clearly establish to whom Mr. Ramirez entrusted his health.  It is disputed whether this was a type of situation where CCCPRC "provided" the service of the physicians and whether Mr. Ramirez had "no option or participation in said choice."  Marquez-Vega, 16 P.R. Offic. Trans. 487.  Although Dr. Perez-Marrero affirms that he "accepted the case and transferred the patient" after his consultation with Dr. Rodriguez, that transfer was accomplished within 24 hours of their conversation without any contact occurring between Dr. Perez-Marrero and Mr. Ramirez prior to the treatment. (Docket No. 310-3 at p. 22.)  As previously discussed, an absence of personal interaction between doctor and patient suggests that a patient has entrusted his health to the hospital generally, and not to the individual physician to whom the hospital has referred him or her.  Evidence is thus needed regarding whether Mr. Ramirez, through Dr. Rodriguez, can be said to have gone "directly to the hospital, [and] the main relationship established [was] between the patient and the hospital administration."  Marquez-Vega, 16 P.R. Offic. Trans. 487. Furthermore, one of HBV's physician's orders indicates

Civil No. 12-2024 (FAB)                                            14

that Mr. Ramirez was to be transferred to CCCPRC "under care of Dr. Edwin Perez for LHC [left heart catheterization], + possible PCI [percutaneous coronary intervention]," (Docket No. 310-6); plaintiffs' expert witness, Dr. Carl Warren Adams ("Dr. Adams"), testified that Mr. Ramirez's transfer occurred because he was in need of a PCI facility, (Docket No. 321-1 at pp. 58, 61, 75, 83); and CCCPRC's clinical director stated that "[t]he hospital, the rule[] is we cannot accept any patient if there is no physician to receive them.  That's the rule," (Docket No. 310-17 at p. 4). Based on that evidence, it is conceivable that the hospital and Dr. Perez-Marrero came as a package deal to Mr. Ramirez: the physician to perform a specialized treatment and the hospital as a "total health care institution and not a building where health-care professionals go privately about their business with no further contact with each other." Marquez-Vega, 16 P.R. Offic. Trans. 487. Because genuine issues of material fact exist regarding whether Mr. Ramirez "[went] directly to a hospital for medical treatment and the hospital 'provide[d]' the physicians who treat[ed] him," id., summary judgment is not warranted.

**III. The Hospital's Liability for Acts or Omissions of Employee Nurses**

Plaintiffs' expert, Dr. Adams, opines that CCCPRC is liable for its failure to enact a protocol directing nurses to notify a surgeon when his or her surgical orders are subsequently modified by another physician.  (Docket No. 310-20 at p. 3.)  Defendant

Civil No. 12-2024 (FAB)                                                    15

argues that it cannot be liable for the omissions in question because the challenged protocol is neither "an established practice" at CCCPRC nor a required procedure under Puerto Rico law. (Docket No. 309 at pp. 24-25.)[7] Plaintiffs respond that defendant incorrectly identifies the proper standard of care to be applied to the conduct of the CCCPRC nurses involved in this case. (Docket No. 326 at pp. 14-16.)

### A.  Standard of Care Applicable to Nursing Staff

Puerto Rico courts have articulated the duty owed to a hospital patient as that "level of care which, recognizing the modern means of communication and education, meets the professional requirements generally acknowledged by the medical profession." Otero v. United States, 428 F. Supp. 2d 34, 46 (D.P.R. 2006) (Dominguez, J.) (analyzing a nurse's breach of duty of care to a patient). "The standard is considered national and should generally be proven through expert testimony." Id. With respect to the standard of care owed specifically by nurses, the Supreme Court of Puerto Rico has further indicated that "[a] nurse should

---

[7] CCCPRC also attacks the credibility of Dr. Adams, asserting that he "has never been qualified as an expert . . . on the governing commonwealth-wide standard of care governing nurses within Puerto Rico." (Docket No. 309 at pp. 23-24.) Having reviewed Dr. Adams' curriculum vitae and deposition testimony regarding his qualifications, however, the Court finds Dr. Adams to be qualified as an expert for summary judgment purposes. See Poulis-Minott v. Smith, 388 F.3d 354, 359 (1st Cir. 2004) ("[A]n expert must be qualified to testify based on the expert's knowledge, skill, experience, training or education.  It is the responsibility of the trial judge to act as gatekeeper and ensure that the expert is qualified before admitting expert testimony.") (internal citations omitted).

exercise a certain standard of reasonable care to see that no unnecessary harm comes to the patient, and said standard of care must be the same as the standard of care exercised by other nurses in the locality or similar localities." Morales v. Monagas, 723 F. Supp. 2d 416, 422 (D.P.R. 2010) (Gelpi, J.) (citing Blas Toledo v. Hospital Nuestra Señora de la Guadalupe, 146 D.P.R. 267, 307, slip op. at 21 (1998)); Pages-Ramirez v. Hospital Español Auxilo Mutuo de P.R., Inc., 547 F. Supp. 2d 141, 149 (D.P.R. 2008) (Pieras, J.). "Nurses . . . have the unavoidable duty to fulfill medical orders with the required urgency and in accordance with each patient's particular circumstances." Morales, 723 F. Supp. 2d at 422 (citing Ponce v. Ashford Presbyterian Comm. Hosp., 189 F.R.D. 31, 33 (D.P.R. 1999)).

**B.  Application**

The parties disagree about whether the failure of certain CCCPRC nurses to inform Dr. Gonzalez-Cancel of material changes to his pre-operative orders constituted a departure from the governing standard of care.  Resolution of this issue requires a determination as to whether the conduct of the CCCPRC nurses adhered to a "certain standard of reasonable care" aimed at ensuring that "no unnecessary harm comes to the patient."  In his deposition, Dr. Adams suggests that it was not, stating that CCCPRC "should have the proper guidelines and supervision in place" to ensure that a "surgeon gets notified if someone is changing his


Civil No. 12-2024 (FAB)                                                17

orders on his patient and has surgery." (Docket No. 310-20 at p. 3.)  The Court agrees with plaintiffs that compliance with this standard of care "would require a nurse, in the preoperative context, to refuse to change an order by the surgeon without his/her knowledge."  (Docket No. 326 at p. 17.)  Channeling Dr. Adams' statements in his deposition, the promulgation of such a simple protocol would seem to be a dictate of "common sense" in all localities.  (Docket No. 310-20 at p. 4.)  The Court finds that Dr. Adams' testimony, therefore, sufficiently advances the standard of care applying to nurses in Puerto Rico.  Because "[i]n a medical malpractice case, issues of deviation from the medical standard of care are questions of fact that must be decided by the jury," Morales, 723 F. Supp. 2d at 423 (citing Cortes-Irizarry, 111 F.3d at 189), defendant's motion for summary judgment is **DENIED**.

### IV. Conclusion

There exists a genuine dispute between the parties over whether Mr. Ramirez entrusted his health first and foremost to CCCPRC at the institutional level, or to Dr. Perez-Marrero as a private patient.  Whether CCCPRC nurses involved in the care of Mr. Ramirez violated the standard of care also remains a subject of legitimate controversy.  Accordingly, both plaintiffs' and defendant CCCPRC's motions for summary judgment, (Docket Nos. 273 and 309), are **DENIED.**

Civil No. 12-2024 (FAB)                                                     18

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 13, 2014.

                                                s/ Francisco A. Besosa
                                                FRANCISCO A. BESOSA
                                                UNITED STATES DISTRICT JUDGE